**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02740-RM-NYW

EDGAR AGUILAR,
ELEAZAR DZIB, and
FREDY HAU,

Plaintiffs,

v.

PEPPER ASIAN INC.,
PEPPER ASIAN II INC., and
CHANG FU LI,

Defendants.

---

**ORDER ON JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on two Motions:

(1) The Joint Motion for Expedited Approval of Settlement Agreement (the "Motion for Approval of Settlement") [Doc. 19, filed January 26, 2022]; and

(2) Plaintiffs' Unopposed Motion for Attorney Fee Award (the "Motion for Attorney's Fees") [Doc. 20, filed January 26, 2022] (collectively, the "Motions").

The Motions are before the undersigned pursuant to the Parties' Joint Notice of Consent to the disposition of the Motions by a magistrate judge and the Order of Reference of Dispositive Motion Pursuant to 28 U.S.C. § 636(c). *See* [Doc. 21; Doc. 22]. Having reviewed the Motions, the applicable case law, and the entire docket, the Motion for Approval of Settlement and the Motion for Attorney's Fees are **GRANTED**.

**BACKGROUND**

Plaintiff Edgar Aguilar ("Mr. Aguilar") initiated this collective action on October 12, 2021, alleging that Defendants Pepper Asian, Inc., Pepper Asian II, Inc., and Chang Fu Lin (collectively, "Defendants") failed to pay their restaurant kitchen employees appropriate overtime wages, failed to provide their workers with rest periods, and improperly paid their employees via both payroll checks and cash and failed to report the cash wages paid to the Internal Revenue Service ("IRS"). *See* [Doc. 1 at ¶¶ 2, 5, 8]. Because Mr. Aguilar was employed by Defendants from approximately March 2018 through September 2021, he initiated this action on behalf of himself and others similarly situated, asserting claims against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. §§ 8-4-101 *et seq.*; and the Colorado Minimum Wage Act (the "Minimum Wage Act"), Colo. Rev. Stat. §§ 8-6-101 *et seq.*, as implemented by the Colorado Overtime and Minimum Pay Standards Order ("COMPS"), 7 C.C.R. 1103-1. *See generally* [Doc. 1]. On October 13, 2021, Plaintiffs Fredy Hau ("Mr. Hau") and Eleazar Dzib ("Mr. Dzib") (collectively with Mr. Aguilar, "Plaintiffs") filed a Notice of Filing of Consents to Join the Litigation, joining in this litigation as Plaintiffs pursuant to 29 U.S.C. § 216(b). *See* [Doc. 6; Doc. 6-1; Doc. 6-2].

The case was originally assigned to the undersigned Magistrate Judge, *see* [Doc. 2], but was reassigned to the Honorable Raymond P. Moore when the Parties declined to consent to Magistrate Judge jurisdiction. *See* [Doc. 11; Doc. 12]. Judge Moore referred the case to the undersigned pursuant to 28 U.S.C. § 636(b). [Doc. 13]. On December 15, 2021, the court convened for a Scheduling Conference. *See* [Doc. 16]. After the Parties informed the court that they were discussing a resolution of this case, the court converted the Scheduling Conference to a

Status Conference, re-set the Scheduling Conference to January 25, 2022, and informed the Parties that if they were to reach a settlement, they should file a notice of settlement. [*Id.* at 1].

On January 20, 2022, the Parties filed the Notice of Settlement, indicating that they had fully resolved this matter. [Doc. 17]. Thereafter, on January 26, 2022, the Parties filed the Motion for Approval of Settlement, seeking expedited approval of the Parties' Settlement Agreement,[1] and Plaintiff filed the Motion for Attorney's Fees. *See generally* [Doc. 19; Doc. 20]. That same day, the Parties filed a Joint Notice of Consent, stating that the Parties unanimously consent to the dispositive resolution of the pending motions by the undersigned Magistrate Judge. [Doc. 21]. Upon the Parties' consent, Judge Moore referred the Motions to the undersigned for disposition pursuant to 28 U.S.C. § 636(c). [Doc. 22].

In the Motion for Approval of Settlement, the Parties request that the court approve their settlement agreement under the FLSA, arguing that (1) this case involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable to all Parties; and (3) the proposed Settlement Agreement contains a reasonable award of attorney's fees. [Doc. 19 at 3]. The Parties request expedited approval of their Settlement Agreement, as one Plaintiff is in immediate need of the settlement funds to cover medical costs, rent, and food costs. *See* [Doc. 19-1]. In the Motion for Attorney's Fees, Plaintiffs request that the court approve an award of $50,000 in attorney's fees to Plaintiffs' counsel—which amounts to one third of the $150,000 settlement amount—arguing that this award is fair and reasonable in the context of this case. *See generally* [Doc. 20]. I consider the Parties' arguments below.

[1] The Parties did not move for conditional certification of a collective action with respect to the FLSA claim, nor did they move for Rule 23 certification of the state law claims. However, because this case includes an FLSA claim, the Parties seek court approval of their Settlement Agreement. *See* [Doc. 19 at 3].

## ANALYSIS

Within the context of a lawsuit brought directly by employees against their employer under section 216(b) to recover unpaid wages or overtime under the FLSA, and upon consideration of whether the proposed settlement is fair, the district court may enter a stipulated judgment approving the agreement and dismissing the action. *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).[2] Approval is appropriate if the Parties demonstrate that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney's fees. *Baker*, 2014 WL 700096, at *1 (citing *Lynn's Food Stores*, 679 F.2d at 1354).

### I. *Bona Fide* Dispute

For the court to discern whether a *bona fide* dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

This court finds that the Parties have adequately described their dispute. Plaintiffs are all former kitchen employees of Pepper Asian Bistro, a restaurant located in Denver, Colorado, and all assert that, with respect to the FLSA, Defendants failed to pay them overtime wages for

[2] The Tenth Circuit has not addressed whether an FLSA settlement requires court approval. However, the presiding judge in this case requires court approval of any FLSA settlement, *see Judd v. Keypoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2021 WL 75224, at *2 n.7 (D. Colo. Jan. 8, 2021), and thus it was appropriate for the Parties to seek court approval of the Settlement Agreement.

overtime hours worked. *See* [Doc. 1 at ¶¶ 2-3, 33-39]. For example, Plaintiffs allege that Mr. Aguilar regularly worked 66-hour weeks, but did not earn any overtime compensation. [*Id.* at ¶ 20]. According to Plaintiffs, Defendants "subjected all their employees to the same policies and practices of failing to pay overtime premium wages for overtime hours worked." [*Id.* at ¶ 22]. Defendants, however, argue that Plaintiffs are each considered "executive" employees and are exempt from the FLSA's overtime-wage provisions. *See* [Doc. 19 at 4]; *see also Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015) ("'[E]mployees employed in a bona fide executive . . . capacity' . . . are exempt from the FLSA's requirements and are thus ineligible for overtime compensation.") (quoting 29 U.S.C. § 213(a)(1) (alterations changed)). Namely, Defendants argue that Plaintiffs were executive employees because (1) they were compensated in excess of $684 per week, the baseline threshold for executive exemption, *see* 29 C.F.R. § 541.100(a)(1); (2) their primary duties were to manage the kitchen; and (3) they regularly directed the work of two other employees and had input in hiring and firing decisions. [Doc. 19 at 4]. While Plaintiff concede that they met the salary threshold to be considered executive employees, they argue that their primary duties were manual kitchen labor, and assert that they did not supervise other employees and were not involved in decisions to hire or terminate employees. [*Id.* at 5]. Based on the foregoing, I conclude that a *bona fide* dispute led to the settlement negotiation and resulting terms.

## II. Fair and Equitable Settlement Agreement

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Baker*, 2014 WL 700096, at *2. The "prime purpose" of the FLSA is to "aid the unprotected, unorganized and lowest paid . . . employees who lack[ ] sufficient bargaining power to secure for themselves a minimum

subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours." (citation omitted)). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief." *Felix v. Thai Basil at Thornton, Inc.*, No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May. 6, 2015) (citation omitted).

"Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P.[ ] 23(e)." *Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 WL 4483992, at *3 (D. Colo. June 30, 2015). In determining whether to approve a class action settlement under Rule 23(e), the Tenth Circuit considers the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Parties have provided the court with a signed copy of the Settlement Agreement. *See* [Doc. 27-1]. Under the terms of the Settlement Agreement, Defendants agree to pay Plaintiffs a gross sum of $150,000 to settle this dispute in full. [*Id.* at 2]. With respect to each particular Plaintiff, Mr. Aguilar is to receive $50,556.34; Mr. Dzib is to receive $24,190.11; and Mr. Hau is

to receive $25,253.54. *See* [*id.* at 3]. In addition, Plaintiffs' counsel is to receive $50,000 in attorney's fees. [*Id.*].

Counsel represent that the Settlement Agreement was the product of an "arm's length settlement negotiations" and a fair and honest negotiation. [Doc. 19 at 6]. Further, the Parties state that questions of law and fact exist in this case—namely, whether Plaintiffs are properly classified as exempt executive employees and whether a two- or three-year statute of limitations applies to Plaintiffs' claims—which place the ultimate outcome of litigation in doubt, which in turn establishes that the value of immediate recovery outweighs the possibility of future relief. [*Id.*]. Based on the Parties' representations of their respective positions and upon its review of the allegations and FLSA case law, the court agrees that questions of law and fact exist which place the outcome of the litigation in question. And for this reason, I find that the value of recovery at this stage in the case outweighs the possibility of future relief for Plaintiffs. Moreover, the Parties state that they believe the settlement is fair and reasonable, and that counsel for all Parties, who are experienced in wage-and-hour litigation, too believe the Settlement Agreement is fair. [*Id.* at 5]. I agree with the Parties that the proposed Settlement Agreement is fair and equitable to both Plaintiffs and Defendants.

The court must also consider whether the Settlement Agreement undermines the purpose of the FLSA, "which is to protect employees' rights from employers who generally wield superior bargaining power." *Morton v. Transcend Servs., Inc.*, No. 15-cv-01393-PAB-NYW, 2017 WL 977812, at *2 (D. Colo. Mar. 13, 2017). Factors that may cause a court to reject a proposed settlement include (1) the presence of other employees similarly situated to the claimant, (2) a likelihood that the claimants' circumstances will recur, and (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region. *Id.* (citing *Dees v.*

*Hydrady, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)). Here, Defendants represent that "all similarly situated employees joined the action and will be compensated via settlement." [Doc. 19 at 7]. The court takes this representation as true, as counsel are officers of the court. *See Selsor v. Kaiser*, 81 F.3d 1492, 1501 (10th Cir. 1996) (observing that, as officers of the court, statements of attorneys to the court are virtually made under oath). With respect to whether Plaintiffs' circumstances will recur, Plaintiffs "note that the that the circumstances giving rise to this action are unlikely to reoccur because Defendants will have paid a large sum of money for a small business to muster to settle the wage claims of their employees," [Doc. 19 at 7], and Defendants represent that they have no history of non-compliance with the FLSA. [*Id.*]; *see also Selsor*, 81 F.3d at 1501. Moreover, the Settlement Agreement is drafted to cover only the claims of Plaintiffs, and does not affect the rights of any other employees of Defendants. *See* [Doc. 27-1]; *see also Morton*, 2017 WL 977812, at *2 (where there was potential for other similarly situated employees, finding that the settlement did not run afoul of the purposes of the FLSA where the settlement involved only the plaintiffs' individual claims). For these reasons, the court is satisfied that the proposed Settlement Agreement does not undermine the purposes of the FLSA.

## III. Attorney Fees

Finally, the court considers whether the amount provided for in the settlement agreement for Plaintiff's attorney's fees is reasonable. Though Plaintiffs have moved separately for attorney's fees, *see* [Doc. 20], Plaintiff applies, and this court finds appropriate, the application of the FLSA rubric to consideration of the attorney's fees. The Settlement Agreement sets aside a sum of $50,000 (pursuant to a 33.3% contingency fee arrangement) for attorney's fees. [Doc. 27-1 at 3]. Plaintiffs assert that the proposed award would be fair and reasonable, and Defendants do not oppose their request for fees. [Doc. 20 at 1].

There is a general preference that parties reach an agreement regarding the fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). However, the court must nonetheless conduct an independent examination of whether the fees are reasonable. *See Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). "In assessing the reasonableness of the percentage of the common fund awarded to class counsel for attorneys' fees, courts within the Tenth Circuit weigh the twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). These factors include:

1. the time and labor required;
2. the novelty and difficulty of the case;
3. the skill requisite to perform the legal service properly;
4. the preclusion of other employment by the attorneys due to acceptance of the case;
5. the customary fee for similar work;
6. whether the fee is fixed or contingent;
7. any time limitations imposed by the client or the circumstances;
8. the amount involved and the results obtained;
9. the experience, reputation, and ability of the attorneys;
10. the "undesirability" of the case;
11. the nature and length of the professional relationship with the client; and

12. awards in similar cases.

*Johnson*, 488 F.2d at 717-19. Not one factor is dispositive, as the court may assign different relative weights to specific factors based on the circumstances of the case. *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 706 (D. Colo. 2007). The court need only consider those factors relevant to its determination. *Gudenkauf v. Staffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

In addition, "[c]ourts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount." *Faulkner v. Ensign United States Drilling Inc.*, No. 16-cv-03137-PAB-KLM, 2020 WL 550592, at *6 (D. Colo. Feb. 4, 2020). The "lodestar amount" represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433. A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).

**A. *Johnson* Factors**

**1. Time and Labor Required (Factor 1)**

Plaintiffs' counsel represents that he "dedicated significant resources and time to developing, investigating, litigating and negotiating the settlement of this case." [Doc. 20 at 3]. Counsel met with and interviewed Plaintiffs and witnesses, drafted the Complaint, created a damages model, reviewed documents submitted by Plaintiffs and Defendants, and engaged in settlement negotiations with opposing counsel and Plaintiffs. [*Id.*]. The court has reviewed the invoice submitted by Plaintiffs' counsel and agrees that it reflects a significant amount of time spent on this case, particularly during the four months between the initial phone intake interview and the filing of the Notice of Settlement. *See* [Doc. 29-1 at 4-6]. I find that the first *Johnson* factor weighs in favor of Plaintiffs' requested fee award.

**2. The Novelty and Difficulty of the Questions Presented (Factor 2)**

Plaintiffs' counsel contends that this case presented a challenge in that Plaintiffs do not speak English and in that Plaintiffs did not possess robust records of the hours they worked or the wages they were paid. [Doc. 20 at 5]. According to Plaintiffs' counsel, "[m]arshalling sufficient testimonial evidence of the Plaintiffs' wages and hours to prompt Defendants to engage in good faith settlement negotiations was a novel and difficult aspect of this case." [*Id.*]. While the court understands that a language barrier may make communications between client and counsel more difficult, the court notes that Plaintiffs speak Spanish, *see* [Doc. 20 at 5], and that Plaintiffs' counsel speaks, reads, and writes fluently in Spanish. [Doc. 20-1 at ¶ 8; Doc. 20 at 5]. Plaintiffs' counsel does not state that he was unable to communicate with his clients or otherwise explain why the representation of non-English speaking clients created difficulty or complexity in this case. *See generally* [Doc. 20]. Moreover, the court was unable to locate robust case law establishing that a language barrier, if one does exist, is a relevant factor in determining whether a case presents novel or difficult circumstances. *See, e.g.*, *United States v. Approximately $299,873.70 seized from a Bank of Am. Acct.*, No. CV 16-00545-KD-N, 2020 WL 4808891, at *7 (S.D. Ala. Aug. 18, 2020) (language barrier "contribute[d] to the novelty and complexity of th[e] action"); *but see Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 593 (S.D.N.Y. 2015) (finding that "the plaintiffs' contention[ ] that this case is complicated because of the difficulty in gathering evidence due to any language barrier, is meritless" where the plaintiffs did not describe the nature and extent of alleged difficulty and where paralegal could translate documents).

However, the court also recognizes that a lack of records or other evidence establishing the wages paid to and hours worked by Plaintiffs may cause complications in securing a settlement in this action, rendering negotiations more difficult than what is typical. *See Fields v. Luther*, No.

JH-84-1875, 1988 WL 121791, at *2 (D. Md. July 12, 1988); *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008), *aff'd*, 307 F. App'x 349 (11th Cir. 2009). In light of these considerations, the court finds that this factor weighs in favor of the requested award.

**3. Skill Required and Experience of Plaintiffs' Counsel (Factors 3 and 9)**

Given their similarly, this court considers the third and ninth *Johnson* factors together. Plaintiffs' counsel attests that he has significant experience representing low-wage workers in FLSA and state-law class and collective actions, having been involved in over 60 such actions. [Doc. 20-1 at ¶¶ 5, 9]. In addition, Plaintiffs' counsel states that special skills are required to represent and protect the rights of Spanish-speaking immigrant workers, and that he possesses these skills through his extensive experience in representing Spanish-speaking immigrants in wage-and-hour litigation. [Doc. 20 at 5]. The court finds that these factors weigh in favor of the requested attorney's fees.

**4. Preclusion of Other Employment and Undesirability of the Case (Factors 4 and 10)**

Plaintiffs' counsel states that the 50.2 hours he spent on this case "could have been spent on other worthwhile cases." [*Id.* at 6]. Moreover, he asserts that there is an "inherent preclusion of other work implicit in acceptance of a wage case for low wage workers." [*Id.*]. Courts have recognized that attorneys taking FLSA collective action cases may be "precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages." *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013). This is particularly true where the case involves low-wage workers, which "mak[es] a contingent fee arrangement even more risky." *Id.* Thus, the court finds these factors weigh in favor of the requested fee award.

**5. The Customary Fee, Fixed or Contingent Nature of the Fee, and Awards in Similar Cases (Factors 5, 6, and 12)**

This court will consider Factors 5, 6, and 12 together because they each concern the percentage of the fee awarded in the Settlement Agreement and the reasonableness of that fee as compared to other cases. As mentioned, the award of attorney's fees is one third of the total settlement sum, which includes costs. [Doc. 20 at 4]. "Courts in this district have recognized that the customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Faulkner*, 2020 WL 550592, at *4 (brackets and internal quotation marks omitted, emphasis added). Indeed, Plaintiffs cite several cases in which similar awards were approved in class or collective action settlements, but do not address whether the fact that this case was never certified as a collective action is relevant to the reasonableness of the contingency fee. *See* [Doc. 20 at 6-7]. However, courts have found a one-third fee amount reasonable in non-collective action cases, too. *See, e.g.*, *Blocklin v. Black Pepper Pho, LLC*, No. 14-cv-01252-WJM-KLM, 2014 WL 6819894, at *4 (D. Colo. Dec. 3, 2014) (non-collective action FLSA case); *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1412-23 (D. Wyo. 1998) ("The standard contingency fee in individual actions is generally accepted to be 33%."). While this case has not been certified as a collective or class action, it nevertheless involves issues under the FLSA, and I find that a 33.3% award is reasonable under the circumstances of this case. Thus, these factors favor the requested award of attorney's fees.

**6. Amount Involved and Results Obtained (Factor 8)**

Finally, Plaintiffs' counsel argues that the $150,000 settlement amount "represents a substantial recovery of wages for low-wage workers" and is an "excellent[ ] result." [Doc. 20 at 8]. The Motion for Attorney's Fees does not indicate whether the recoveries for each Plaintiff fully or significantly account for the alleged unpaid wages. *Compare Faulkner*, 2020 WL 550592,

at *5 (D. Colo. Feb. 4, 2020) (finding that a recovery that "represent[ed] a significant portion of the alleged paid wages" was an "excellent" result for a settlement class). However, the court notes that all three Plaintiffs will receive compensation in five-figure amounts, and given the risks involved in this litigation, the court finds that the expected recovery is a favorable result for Plaintiffs. *Cf id.* at *5 (approving "a net recovery for the four plaintiffs ranging from $2,535.24 to $12,396.44"); *see also Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement). I find this factor weighs in favor of the requested fees.

In sum, the relevant *Johnson* factors weigh in favor of the reasonableness of the requested attorney's fees. I next compare the requested fees with the applicable lodestar amount.

**B. Lodestar Crosscheck**

As set forth above, whether a rate is "reasonable" turns on the prevailing market rate for an attorney with similar experience in the relevant market. *Guides*, 295 F.3d at 1078. A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995). In order to satisfy this burden, Plaintiffs must produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). The court may adjust the rates suggested by counsel based on its own familiarity with the range of prevailing rates in the Denver, Colorado market. *Guides*, 295 F.3d at 1079. In addition, the Local Rules of Civil Practice for this District requires that a motion for attorney's fees be supported by affidavit and provide a "detailed

description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed." D.C.COLO.LCivR 54.3.[3]

Plaintiffs' counsel seeks $50,000 in combined attorney's fees and costs. *See* [Doc. 20 at 4]. Having billed at $400 per hour for 50.2 hours spent on this litigation, the requested fee amount is a 2.4 multiplier on the $20,654.40 lodestar amount, which is comprised of $20,080.00 in fees and $574.40 in costs. [*Id.* at 3-4]. This multiplier appears to be in the range found reasonable within this District and Circuit. *See, e.g.*, *Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2019 WL 4751788, at *7 (D. Colo. Sept. 30, 2019) (approving fees reflecting a 2.34 multiplier); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (finding no error in 2.57 multiplier); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collective cases from this district ranging from a 2.5 multiplier to a 4.6 multiplier).

Counsel states that the 50.2 hours spent "investigating, litigating and negotiating the resolution of this case" were "reasonably and necessarily expended," [Doc. 20 at 3; Doc. 20-1 at ¶ 11], and has submitted an invoice describing the number hours spent on discrete tasks and parts of this litigation. *See* [Doc. 29-1 at 406]. He further asserts that his hourly rate is reasonable, relying on two state court cases arising out of the Denver District Court. [Doc. 20-1 at ¶ 10]. Finally, counsel has submitted a declaration from another Denver-based attorney, Mari Newman, who attests that she is familiar with the prevailing rates in this area and in this industry and that

---

[3] On February 8, 2022, this court entered a Minute Order noting that, while Plaintiffs' counsel stated that he had spent 50.2 hours on the case, as reflected in "the attached invoice," *see* [Doc. 20 at 3], there was no invoice attached to the Motion for Attorney's Fees. [Doc. 28 at 1]. The court ordered Plaintiffs to supplement their Motion for Attorney's Fees to comply with Local Rule 54.3 on or before February 11, 2022. [*Id.* at 2]. Plaintiffs filed the required supplement that same day. [Doc. 29-1].

Plaintiffs' counsel's rate of $400 per hour "is very reasonable in the Colorado community for wage litigation." [Doc. 20-2 at ¶ 8].

Courts in this District have found rates between $200 and $600 per hour reasonable in FLSA actions like this one. *See, e.g.*, *Prim*, 2019 WL 4751788, at *7 ("The Court has previously found that an $600 hourly rate charged by class counsel was generally consistent with the rates charged in this district." (citing *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018)); *Shaw*, 2015 WL 1867861, at *8 (approving hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation); *Faulkner*, 2020 WL 550592, at *6 ("The hourly rate charged by class counsel, ranging from $150 to $600 per hour, is also generally consistent with the rates charged in other cases in this district.") (internal citation omitted). The court finds that the $400 rate charged by Plaintiffs' counsel, who has sixteen years of experience in wage litigation, is reasonable and fair.

For all of these reasons, I conclude that the lodestar crosscheck supports the reasonableness of the requested fee. And because the *Johnson* factors also weigh in favor of approving the request for fees, the court finds that the Settlement Agreement contains a reasonable award of attorney's fees. *Baker*, 2014 WL 700096, at *1. Accordingly, the Motion for Approval of Settlement and the Motion for Attorney's Fees are **GRANTED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Joint Motion for Expedited Approval of Settlement Agreement [Doc. 19] is **GRANTED**;

(2) The Settlement Agreement [Doc. 27-1] is **APPROVED**;

(3) Plaintiffs' Unopposed Motion for Attorney Fee Award [Doc. 20] is **GRANTED**; and

(4) Within **14 days** after the entry of this Order, the Parties **SHALL FILE** a Status Report notifying the court whether the settlement funds have been exchanged as set forth in the Settlement Agreement. *See* [Doc. 27-1 at 2].[4]

DATED: February 10, 2022

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

[4] The Settlement Agreement states that, within ten days of the court's approval of the Agreement, Defendants will deliver settlement checks to Plaintiffs' counsel's office. [Doc. 27 at 2]. The court notes that Parties request that the court dismiss this action with prejudice upon approval of the Settlement Agreement. *See* [Doc. 19 at 18]. While Judge Moore referred the pending Motions to the undersigned "for disposition," *see* [Doc. 22 at 1], the court declines to direct the Clerk of Court to terminate this matter at this juncture, leaving such decision for the presiding judge after the Parties have confirmed the exchange of settlement funds.